Yvette CRUZ, Plaintiff–Appellant,

v.

COACH STORES, INC., Defendant–Appellee,

David Otani, William Betts, Diane Lewis, Sara Lee Corporation, and Herve Heriveaux, Defendants.

Docket No. 98–9654.

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1999.

Decided Jan. 20, 2000.

Peter G. Eikenberry, New York City, (Laurence M. Shanahan, Matthew G. DeOreo, on the brief), for plaintiff-appellant.

Lauren Reiter Brody, Rosenman & Colin LLP, New York City, for defendant-appellee.

Before: JACOBS, CALABRESI and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

This appeal concerns plaintiff-appellant Yvette Cruz's claims of race and sex discrimination against her former employer, defendant-appellee Coach Stores, Inc. ("Coach"). Cruz brought this action in 1996, claiming that Coach had violated federal, state, and city civil rights laws by, *inter alia,* failing to promote her and terminating her because of her race, retaliating against her for exercising Title VII-protected rights, and tolerating an environment of discriminatory harassment. On September 25, 1997, the district court (Jed S. Rakoff, Judge) dismissed Cruz's failure to promote and retaliation claims pursuant to Fed.R.Civ.P. 12(b)(6) for fail-

ure to state a claim for relief. On November 17, 1998, the court granted summary judgment to Coach pursuant to Fed. R.Civ.P. 56 on Cruz's remaining claims. *See Cruz v. Coach Stores, Inc.,* 1998 WL 812045 (S.D.N.Y. Nov.18, 1998). For the reasons that follow, we affirm the district court's dismissal of Cruz's failure to promote and retaliation claims. We also affirm its grant of summary judgment with respect to all claims other than Cruz's charge of hostile work environment harassment. On Cruz's harassment claim, we vacate the district court's judgment and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

Yvette Cruz, a Hispanic woman, began working at Coach as a part-time sales associate in 1990. In 1991, she was promoted to a secretarial position, which she held until her termination in 1995. In June of 1994, Cruz alleges, her supervisor informed her that Coach was planning to create a new "Coordinator of Systems Operations" job in January 1995, and promised Cruz that she would receive that position as soon as it became available. Coach never created the position, however, and Cruz remained in her secretarial job until her termination from the company.

Cruz's termination from Coach stemmed from events occurring on November 17, 1995. On that day, Cruz's co-worker, Herve Heriveaux, approached Cruz during her lunch hour and commented that her "nipples [were] erect." An argument ensued between Cruz and Heriveaux, during which Heriveaux stepped extremely close to Cruz and called her a "f___ing cunt." Cruz then slapped Heriveaux, who responded by placing her in a headlock. The altercation ended when Cruz's supervisor intervened.

Three days later, following an investigation by Coach's Human Resources Department, both Cruz and Heriveaux were terminated pursuant to Coach's rule against

"physical or verbal assault while on company premises." Cruz then filed a timely complaint with the Equal Employment Opportunity Commission, alleging that Coach had terminated her because of her race and charging the company with failure to promote and retaliation. Cruz also claimed that throughout the time she worked at Coach, the company "condon[ed] unpermitted touching by supervisors." Upon receiving a right-to-sue letter, she filed the instant action under 42 U.S.C. § 1981 (1994), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994), the New York State Human Rights Law, N.Y.Exec.Law § 290 *et seq.* (McKinney 1993 & Supp.1999), and the New York City Administrative Code, N.Y.C.Admin.Code § 8–107 (1998). The district court dismissed Cruz's failure to promote and retaliation claims pursuant to Fed.R.Civ.P. 12(b)(6) and granted Coach's summary judgment motion on all remaining claims pursuant to Fed.R.Civ.P. 56. This appeal followed.

## DISCUSSION

### I. *The 12(b)(6) dismissals*

We review *de novo* a 12(b)(6) dismissal for failure to state a claim for relief. *See Chance v. Armstrong, I/O,* 143 F.3d 698, 701 (2d Cir.1998). On appeal, we must accept all factual allegations in the complaint as true, and may affirm the district court's dismissal only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (internal quotation marks omitted).

### A. *Failure to promote*

Cruz's failure to promote claim rests on her allegation that, because of her race, Coach reneged on its promise to promote

her to Coordinator of Systems Operations. The district court dismissed this claim on the ground that Cruz had not alleged the elements of a prima facie case, because she had not claimed that she applied and was qualified for any position that was subsequently filled by a non-minority. We agree.

In order to establish a prima facie case for failure to promote, the plaintiff must allege that: 1) she "is a member of a protected class"; 2) her job performance was satisfactory; 3) she applied for and was denied promotion to a position for which she was qualified; and 4) the position "remained open and the employer continued to seek applicants." *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d Cir.1998) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).[1] To meet this prima facie burden, Cruz alleged in her complaint that her supervisor promised her, in June 1994, that she would be promoted to the new "coordinator" position when Coach created that job in January 1995. The company did not create the coordinator position, however, in January 1995 or at any later time. Rather, Cruz alleges, in October 1995, Coach hired two non-minority individuals as "financial analysts" and gave these two employees many of the analytical responsibilities it had previously entrusted to Cruz.

Significantly, Cruz did not allege in her complaint that she ever applied for the financial analyst position or that she was qualified for that position. Nonetheless, Cruz argues that her complaint makes out a prima facie case for failure to promote because the financial analyst and coordinator positions were in fact the same job, and therefore an application for the coordinator position—which she presumably completed, either formally or informally—was

**1.** Our consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims. *See Leopold v. Baccarat, Inc.,* 174 F.3d 261, 264 n. 1 (2d Cir.1999) (New York state law); *Landwehr v. Grey Adver. Inc.,* 211 A.D.2d 583, 622 N.Y.S.2d 17, 18 (1st Dep't 1995) (New York City law).

in effect an application to be a financial analyst. Cruz's complaint, however, is devoid of any language from which the court might draw this conclusion. Although the complaint alleges that "[Cruz's] promised position [as coordinator] was given to the financial analysts," it does not describe the responsibilities of either position, the respective qualifications of Cruz and the financial analysts, or otherwise indicate that the two jobs were equivalent in any way. The complaint thus cannot be read to claim either that the two jobs were identical or that an application for coordinator was an adequate substitute for an analyst application.[2]

Moreover, nothing in the complaint supports the inference that Cruz was qualified to be a financial analyst. Even taking as true Cruz's allegation that Coach gave some of her responsibilities to the financial analysts, this fact alone does not establish that Cruz was competent to perform all the duties of the analyst job, and nothing else in the complaint helps to demonstrate that point. The complaint contains no information about either the responsibilities of a financial analyst or Cruz's employment skills, information that might have supported the inference that Cruz was fit for the position. Without such information, the complaint cannot be understood to allege, either directly or indirectly, that Cruz was qualified for the job. Absent this allegation, and absent any claim that she applied for the financial analyst position, Cruz's complaint fails to state a prima facie case for failure to promote.

## B. *Retaliation*

Along with the failure to promote claim, Cruz's complaint alleged that Coach terminated her in retaliation for "defend[ing] herself against Heriveaux's sexual harassment and physical assault" in the altercation that ultimately led to her dismissal.

Here as well, Cruz's complaint fails to state the elements of a prima facie retaliation claim. Accordingly, we affirm the district court's dismissal of this claim.

To establish a prima facie case for retaliation, a plaintiff must demonstrate "participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action." *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991). The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *See* 42 U.S.C. § 2000e-3; *see also, e.g., Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 134–35 (2d Cir.) (discussing scope of statute's "protected activity" provision), *cert. denied,* —— U.S. ——, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999). In this case, Cruz did not make out a prima facie case of retaliation because she did not claim to have engaged in any "protected activity" within the meaning of the statute. Slapping one's harasser, even assuming *arguendo* that Cruz did so in response to Title VII-barred harassment, is not a protected activity. While the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of "opposition" includes activities such as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990). It does not constitute a license for employees to engage in physical violence in order to protest discrimination.

---

2. Even during oral argument, Cruz's counsel was unable to point to evidence in the record equating the coordinator and financial analyst positions. Although he cited testimony indicating that the two jobs were equivalent in the Coach employment hierarchy, this testimony does not support the point crucial to Cruz's failure to promote claim, *i.e.,* that the positions had similar responsibilities and qualifications.

We need not decide here whether violence in opposition to Title VII-prohibited behavior might, in some circumstances, be protected under Title VII's retaliation provision. In the situation at bar, Cruz had many options for resisting Heriveaux's offensive behavior, including leaving the room and reporting the incident to Human Resources. She selected none of these options, however, but chose instead to respond by slapping Heriveaux. Under these circumstances, Cruz's decision—even if, as she claims, she believed herself to be acting in self-defense—does not enjoy the protection of Title VII. Because Cruz engaged in no "protected activity," therefore, she has not established a prima facie case for retaliatory discharge.

## II. *Coach's summary judgment motion*

After dismissing Cruz's failure to promote and retaliation claims, the district court granted summary judgment to Coach on Cruz's remaining claims of discriminatory termination, hostile work environment harassment, and disparate impact. We review this grant of summary judgment *de novo. See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir.1998). In deciding whether summary judgment was appropriate, we must draw all inferences in favor of the non-moving party, and may affirm only if the record reveals no genuine issue of material fact for trial. *See id.* Here, although we affirm the district court's grant of summary judgment with respect to the termination and disparate impact claims, we find that Cruz established a genuine factual dispute regarding her claim of hostile work environment harassment. We therefore remand the case on that basis.

### A. *Termination*

 Our review of Cruz's discriminatory termination claim follows the *McDonnell Douglas* burden-shifting inquiry. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Under that test, Cruz must first establish a prima facie case of discrimination by demonstrating membership in a protected class, qualification for the position, adverse employment action, and circumstances giving rise to an inference of discrimination. *See id.* If she succeeds in this task, the burden shifts to Coach to produce a legitimate, non-discriminatory reason for her termination. Once Coach has done so, the burden shifts back to Cruz to show that the company's stated reason is in fact a pretext for discrimination. *See id.* at 804, 93 S.Ct. 1817; *see also Austin v. Ford Models, Inc.*, 149 F.3d 148, 152–153 (2d Cir.1998) (discussing burden-shifting inquiry).

 Like the district court, we assume that Cruz met her minimal burden of establishing a prima facie case of discrimination. *See Cruz*, 1998 WL 812045, at *7. The burden then shifted to Coach to articulate a legitimate, non-discriminatory reason for terminating Cruz, which Coach satisfied by pointing to its company policy prohibiting any "physical or verbal assault" on company premises. In response, Cruz was required to produce evidence from which a jury could infer that Coach's reliance on the policy was pretextual and that its real reason for terminating her was discrimination. We find that Cruz failed to create a jury question as to pretext, and that summary judgment was therefore appropriate on this claim.

Cruz attempted to show pretext mainly by claiming that although Coach purportedly terminated her for violating the no-assault rule, similarly situated non-Hispanic employees who violated the rule were not terminated. For example, on appeal Cruz directs the Court's attention to a report she filed about her former supervisor David Otani, who, she claims, "verbally assaulted" her by telling her that she should lose weight. She also cites multiple instances of racially or sexually offensive remarks by other non-minority Coach employees. Cruz argues that these "verbal assaults" violate Coach's prohibition on "physical or verbal assaults while on company premises," and that Coach's failure to

terminate the perpetrators is evidence of an enforcement policy that discriminates against Hispanic employees. She supports this claim, moreover, by noting that the three employees (other than Cruz and Heriveaux) whom Coach has terminated for fighting, pursuant to the no-assault policy, have Hispanic surnames.

Cruz's theory fails to create a jury question on pretext, however, because she has not established that she was similarly situated to the non-Hispanic employees whose violations of the policy Coach allegedly overlooked. Specifically, Cruz engaged in a physical fight, while the other employees' behavior—offensive though it may have been—involved words only.[3] This distinction is fatal to Cruz's discriminatory enforcement claim. Not only did Cruz fail to produce evidence that non-Hispanic employees who engaged in a physical assault escaped termination, the record reveals that Coach also terminated Heriveaux, who is not Hispanic, on the basis of the fight with Cruz. The reasonable inference, therefore, is that Coach enforced the policy against Cruz not because she is Hispanic, but because she slapped Heriveaux.

Cruz's argument that she acted in self-defense also fails to support her claim of pretext. First, as the district court noted, the no-assault rule contains no self-defense exception. Second, even if Cruz herself believed that she was acting in self-defense, she has produced no evidence showing that Coach believed that to be the case. She therefore has failed to demonstrate that Coach viewed the altercation as anything other than an "assault" within the meaning of the company's prohibition. Indeed, the documents and deposition testimony in the record all indicate that Human Resources personnel decided to terminate both Cruz and Heriveaux for engaging in a fight. Cruz has

offered no evidence to establish that Coach's stated reliance on that policy was a pretext for race discrimination.

### B. Hostile work environment

The district court rejected Cruz's claim of race- and gender-based hostile work environment harassment on two separate bases. First, the court found that her complaint had not pled such a claim. Second, in ruling on the merits, it found that Cruz had not adduced sufficient evidence of severe and pervasive harassment to sustain a hostile work environment charge. The court concluded that because Cruz could name only one instance on which she overheard a racial epithet, and could cite only "vague and unspecified" instances of inappropriate sexual behavior, she had not demonstrated the level of pervasive hostility necessary to support her hostile environment claim. We disagree and remand for further proceedings on this issue.

### 1. The pleadings

▮▮▮▮▮ Turning first to the issue of Cruz's complaint, we find that although the complaint did not refer specifically to "hostile work environment harassment," it did describe the harassment Cruz experienced in enough detail to put the claim before the court. In particular, the complaint states that Human Resources Manager Rick Bloom "is notorious at Coach for his discriminatory attitudes towards minorities—particularly Hispanics—which he expresses by racial and ethnic slurs. Since August 1, 1995, Bloom a) has frequently referred to Hispanics as 'spics,' African Americans as 'Niggers,' and b) has stated that 'they are only capable of sweeping the floor at McDonalds'...." Later in the complaint, under the heading of "Discriminatory Harassment and Violence," Cruz

---

**3.** Cruz has, at best, illustrated that Coach failed fully to implement its own rule against assaults at the workplace. Nothing in Title VII, however, requires Coach to adopt or to follow such a rule in making its employment decisions. Title VII only requires that the employment decisions Coach makes be free of discrimination. In this case, Cruz has not shown that discrimination played any part in Coach's enforcement, or lack thereof, of the no-assault rule.

referred to the sexual harassment she allegedly experienced from her former co-worker David Otani: "Coach ratified and accepted Lewis', Otani's, Betts', and Heriveaux's action by their failure to act on Ms. Cruz's complaints, by not disciplining Otani for his harassment of Cruz, and by terminating Cruz's employment under the pretext of fighting in the workplace after she was physically beaten and sexually assaulted...."[4]

While we acknowledge that Cruz might have stated her claim of hostile work environment harassment more artfully, the essential elements of the charge do appear in the complaint. Moreover, several of the numerous discovery disputes that took place over the course of the litigation concerned Cruz's belief that she was the victim of sexual and racial harassment, thereby foreclosing any argument that the defendants lacked notice of Cruz's claim. *See, e.g.,* Plaintiff's First Set of Interrogatories, ¶¶ 5–10, 13 (requesting information about complaints of "discrimination or harassment"); Defendant's Response to Plaintiff's First Set of Interrogatories (objecting to plaintiff's requests).

■■■ The totality of the circumstances convinces us that, despite Cruz's imprecise complaint, the district court was correct in considering Cruz's hostile work environment claim on the merits. Under Fed. R.Civ.P. 15(b), a district court may consider claims outside those raised in the pleadings so long as doing so does not cause prejudice. *See* Fed.R.Civ.P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings."); *see also Jund v. Town of Hempstead,* 941 F.2d 1271, 1287 (2d Cir.1991) (refusing to exclude claims not alleged in complaint where claims had been addressed on the merits both on summary judgment and at trial) (citing Rule 15(b)). In opposing a Rule 15(b) amendment, "a party cannot normally show that it suffered prejudice simply because of a change in its opponent's legal theory. Instead, a party's failure to plead an issue it later presented must have disadvantaged its opponent in presenting its case." *New York State Elec. & Gas Corp. v. Secretary of Labor,* 88 F.3d 98, 104 (2d Cir.1996).

■■■ In this case, Coach failed to demonstrate any prejudice arising · from the district court's consideration of Cruz's hostile work environment claim. Although Coach's counsel objected at the summary judgment hearing to Cruz's belated claim for harassment, she did not claim that Cruz's tardiness had disadvantaged Coach in any respect. Rather, she attacked Cruz's claim ·on the merits. In these circumstances, Cruz's failure explicitly to plead a hostile work environment claim in her Second Amended Complaint· did not

---

4. We agree with the district court that, because David Otani left Coach in 1992 and Cruz did not bring her EEOC charge until May of 1996, any allegations relating to Otani's behavior alone are time-barred. We further agree that Otani's behavior is too far removed from Rick Bloom's to form the basis of a "continuing violation" claim for harassment. The continuing-violation theory extends the statute of limitations where there is "proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue for so long as to amount to a discriminatory policy or practice." *Quinn v. Green Tree Credit Corp.,* 159 · F.3d 759, 766 (2d Cir.1998) (quoting *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994)) (internal quotation marks omitted). There is no indication in the record that Bloom and Otani acted in concert, or that their behavior was related in any way other than to be similarly offensive. That two individuals engaged in similar discriminatory behavior is not enough to demonstrate a discriminatory policy or practice. *See Quinn,* 159 F.3d at 765 ("[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." (citation and internal quotation marks omitted)). Nor does the record suggest that Coach knowingly allowed Otani's harassment to continue unremedied for so long as to constitute a policy or practice of harassment.

preclude the district court's consideration of that issue on summary judgment .[5]

### 2. Evidence of a hostile working environment

Having found no procedural obstacle to considering Cruz's hostile work environment claim, we now turn to the merits. In order to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Isolated instances of harassment ordinarily do not rise to this level. *See, e.g., Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir.1992). Rather, the plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were "sufficiently continuous and concerted" to have altered the conditions of her working environment. *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997) (quoting *Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577 (2d Cir.1989)) (internal quotation marks omitted).

Determining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances. Because the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim. *See id.* at 150–51. Nor must offensive remarks or behavior be directed at individuals who are members of the plaintiff's own protected class. Remarks targeting members of other minorities, for example, may contribute to the overall hostility of the working environment for a minority employee. *See Schwapp v. Town of Avon*, 118 F.3d 106, 111–12 (2d Cir.1997) (finding that harassment of other minorities was relevant to whether a black police officer experienced a racially hostile or abusive working environment).

In this case, the record on summary judgment contains sufficient evidence of both racial and sexual harassment to create a triable question on Cruz's hostile work environment claim. Cruz's case primarily involves the behavior of Rick Bloom, a supervisor in another Coach department to whom Cruz frequently turned for assistance on various work-related matters. Regarding the racial claim, Cruz testified that beginning on her first day at Coach, Bloom repeatedly would make "loud racial comment[s]"—including use of the word "nigger"—during Cruz's daily trips to the mailroom. Marva Brown, another Coach employee, further testified that Bloom constantly made racially derogatory remarks, including references to

---

**5.** We also note that Cruz's failure specifically to include a hostile work environment claim in her EEOC complaint does not bar our consideration of that claim on appeal. First, Cruz's allegation in her EEOC complaint of "unpermitted touching by supervisors" is sufficient to support at least her claim of sexual harassment. Second, and more importantly, Coach has waived on appeal any argument based on Cruz's EEOC charge. *See Zipes v. TWA, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). Cruz's brief before this court claims racial as well as sexual harassment, and Coach counters this claim only on the merits, without referencing Cruz's EEOC complaint. Coach therefore may not prevail here on the ground that Cruz did not raise a hostile work environment claim in her EEOC charge. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

"spics" and "Colored People's Time." In addition, former employee Eugene Bampoe stated in his affidavit that between 1993 and either 1995 or 1996, the period during which he was employed at Coach, he repeatedly heard Bloom use racial epithets and make remarks such as, "the only other job you [Hispanic] people can do is sweep the floors in McDonald's."

With respect to her claim of sexual harassment, Cruz testified that during her same daily trips to the mailroom, Bloom would make repeated remarks to the effect that women should be barefoot and pregnant. Furthermore, Cruz testified, Bloom would stand very close to women when talking to them and would "look[ ] at [them] up and down in a way that's very uncomfortable." On these occasions, Cruz testified, Bloom would move increasingly close to her, "so usually if there is a wall I end up against the wall talking to him, and what I'll do is cut the conversation short and leave." When Cruz informed Bloom that she disliked this behavior, he would either laugh or ignore her.

Viewing this evidence—and the other instances of harassment to which Cruz and others testified—as we must, in the light most favorable to the plaintiff, we find that Cruz has met her burden of demonstrating an atmosphere of both racial and sexual hostility.[6] Although the district court characterized Bloom's racial harassment as occurring on "only one occasion," *Cruz,* 1998 WL 812045, at *9, Cruz has adduced evidence that Bloom in fact subjected her and others to blatant racial epithets on a regular if not constant basis. From this evidence, a jury reasonably might conclude that Bloom, a Coach supervisor, created a working environment that was hostile to Cruz on the basis of her race. *Cf. Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 439 (2d Cir.

1999) ("Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates.") (quoting *Rodgers v. Western–Southern Life Ins. Co.,* 12 F.3d 668, 675 (7th Cir. 1993)). Moreover, even if Cruz herself were not present or were not the target of some of Bloom's racial remarks, a jury plausibly could find that his persistently offensive conduct created an overall "hostile or abusive environment," *Harris,* 510 U.S. at 21, 114 S.Ct. 367, which exacerbated the effect of the harassment Cruz experienced individually. *Cf. Schwapp,* 118 F.3d at 112 ("Whether Schwapp was aware of [harassment directed at others] during his employment, and, more significantly, whether in light of these incidents, the incidents Schwapp experienced more directly 'would reasonably be perceived, and [were] perceived, as hostile or abusive,' are factual issues that should be resolved by a trier of fact." (quoting *Harris,* 510 U.S. at 22, 114 S.Ct. 367) (alterations in original)).

Similarly, we find that a reasonable jury could view the sexual harassment Cruz experienced as severe and pervasive enough to alter the conditions of her working environment. The district court apparently considered the instances of sexual harassment in this case too vague or isolated to support a hostile work environment claim. *See Cruz,* 1998 WL 812045, at *9. We find, however, that the physically threatening nature of Bloom's behavior, which repeatedly ended with him backing Cruz into the wall until she had to "cut the conversation short" in order to extricate herself, brings this case over the line separating merely offensive or boorish conduct from actionable sexual harassment. Although the record does not reveal how

---

**6.** We emphasize, however, that Cruz's hostile work environment claim rests only on evidence of this sort and does not, despite her argument to the contrary, encompass her termination pursuant to the no-assault policy. *See* Second Amended Complaint, ¶ 84 (charging Coach with engaging in "discriminatory harassment and violence" by, *inter alia,* "terminating Cruz's employment under the pretext of fighting in the workplace"). Nor does Cruz's hostile work environment claim affect her claim for back pay.

often Bloom engaged in this behavior, it does suggest that Cruz encountered Bloom on a daily basis. Drawing inferences in favor of the plaintiff, a reasonable jury could conclude that Bloom physically harassed Cruz regularly throughout her tenure at Coach in a manner that was hostile to her because of her sex.

Cruz's claim finds further support, moreover, in the interplay between the two forms of harassment. Given the evidence of both race-based and sex-based hostility, a jury could find that Bloom's racial harassment exacerbated the effect of his sexually threatening behavior and vice versa. *Cf. Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir.1999) (recognizing that evidence of religious harassment could help support racial hostile work environment claim); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir.1987) (noting that evidence of racial harassment may help establish sexually hostile work environment).[7] Based on the evidence Cruz presented of both racial and sexual harassment, therefore, a jury reasonably could conclude that Bloom's behavior "alter[ed] the conditions of [her] employment" based on her race and/or her gender. *Harris*, 510 U.S. at 21, 114 S.Ct. 367. Accordingly, we

vacate the district court's grant of summary judgment on Cruz's hostile work environment claim.[8]

## C. *Disparate impact*

The district court also granted summary judgment on Cruz's disparate impact claim, finding that her complaint "[could] not fairly be read to state such a claim." Not only was the district court correct on this ground, but even assuming that Cruz had stated a disparate impact claim, she also failed utterly to establish a prima facie case, because she never alleged that any "facially neutral" Coach policy has a disparate effect on minority employees. *See Brown*, 163 F.3d at 712 (stating elements of a disparate impact case). Cruz argues that because, aside from Heriveaux, only Hispanic employees have been terminated under the no-assault rule, the rule has a disparate impact on minority employees. She further alleges, however, that this disparity is due to discriminatory enforcement of the no-assault policy, not to the disparate effect of the policy as neutrally applied. Moreover, Cruz has not alleged that a policy with a lesser disparate impact would accomplish the same goals. Under these circumstances, she

---

7. A question remains as to whether a plaintiff may aggregate evidence of racial and sexual harassment to support a hostile work environment claim where neither charge could survive on its own. *Cf. Hicks*, 833 F.2d at 1416 (finding that "in determining the pervasiveness of the harassment against a plaintiff, a trial court may aggregate evidence of racial hostility with evidence of sexual hostility"). Because we find that Cruz adduced sufficient evidence to support independent racial and sexual harassment claims, we need not reach this issue.

8. Following the close of briefing on the summary judgment motion below, the Supreme Court clarified the standard for employer liability in sexual harassment cases. According to the recently announced rule, an employee who brings a claim for hostile work environment harassment by a supervisor is entitled to a presumption that the employer is liable for the harassment. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141

L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998); *see also Quinn*, 159 F.3d at 767 (discussing *Burlington Industries* and *Faragher* rules). The employer may rebut that presumption, however, "if it can plead and prove, as an affirmative defense, that 1) the employer exercised reasonable care to prevent and promptly correct any sexual harassment by such supervisor, and 2) the employee unreasonably failed to avail herself of any corrective or preventative opportunities provided by the employer or to avoid harm otherwise." *Id.* (citing *Burlington Indus.*, 118 S.Ct. at 2270; *Faragher*, 118 S.Ct. at 2292–93).

The question of employer liability was not raised below, and was not briefed on appeal. We therefore do not address it here. On remand, however, the district court is of course free to invite further factual development regarding the employer liability issue, and to consider a renewed motion for summary judgment on this ground.

has established no basis for disparate impact liability. *See* 42 U.S.C. § 2000e–2(k)(1)(A) (stating proof required in disparate impact cases).

### III. *Cruz's other claims*

 Cruz raises a number of other issues on appeal, on which we generally affirm for substantially the same reasons stated by the district court. With respect to Cruz's motion for class certification, we agree with the district court that the motion was untimely and that, on the merits, Cruz failed to establish the required elements of numerosity, commonality, typicality and adequacy of representation. *See Cruz,* 1998 WL 812045, at *3–*4 (citing Fed.R.Civ.P. 23(a)). Her claim that the district court erred in failing to consider a proffered expert report is also unpersuasive. At the summary judgment stage, the district court has broad discretion to rule on the admissibility of expert testimony, *see Raskin v. Wyatt Co.,* 125 F.3d 55, 65–66 (2d Cir.1997), and Cruz has not shown that the court abused its discretion in finding the report methodologically flawed.

 Cruz's claim that Coach discriminated against minorities by preferring employees with the "Coach look," i.e., white and blond, also cannot survive summary judgment. Even assuming *arguendo* that Cruz established that such a policy existed, she has failed to demonstrate that this preference affected her employment in any way. She has not shown, for example, that absent the "Coach look" policy, she would have received her desired promotion, nor has she established that the policy contributed to the decision to terminate her. Accordingly, even if Coach engages in this discriminatory practice, Cruz lacks standing to challenge it. As to Cruz's motion for a default judgment based on Coach's alleged instances of delay and neglect during litigation, she has failed to show that she was prejudiced in

any way by Coach's actions, and default judgment is therefore inappropriate. Finally, with respect to Cruz's many discovery challenges, we trust that the district court will reconsider its discovery rulings insofar as they affect Cruz's hostile work environment claim.[9] In all other respects, we affirm the judgment of the district court.

## CONCLUSION

For the foregoing reasons, we vacate the district court's decision to grant summary judgment on Cruz's claim of hostile work environment harassment and remand the case for further proceedings on that issue. In all other respects, the judgment of the district court is affirmed.

---

**9.** In particular, Cruz is entitled to discovery that allows her to develop the claim that the workplace atmosphere, as a whole, was hostile to women or minorities. *See supra* Part II.B.2.