Betty VAN HORN, Plaintiff,

v.

SPECIALIZED SUPPORT SERVICES,
INC., and Fred Fridlington,
Defendants.

No. 4:01–CV–90550.

United States District Court,
S.D. Iowa,
Central Division.

May 2, 2003.

Paige E. Fiedler, Johnston, IA, for Plaintiff.

Ronald L. Anderson, Richard Howes, West Des Moines, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

In this action, Plaintiff Betty Van Horn asserted claims of sexual harassment and retaliation in violations of 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Iowa Civil Rights Act, Iowa Code § 216.1 *et seq.* (the "ICRA"). Following a two-day bench trial, this Court entered its Findings of Fact, Conclusions of Law, and Judgment on January 29, 2003, finding individual Defendant Fred Fridlington not liable on any of Plaintiff's claims and finding for Defen-

dant Specialized Support Services, Inc. ("SSS") on Plaintiff's claim of sexual harassment based on a hostile work environment. The Court found SSS liable to Plaintiff on her retaliation claim and awarded compensatory and punitive damages, as well as damages for emotional distress, for a total damage award of $82,091.86, with costs. Defendant subsequently filed a motion for judgment as a matter of law, and both parties timely moved the Court to amend the judgment, or in the alternative, for a new trial, pursuant to Federal Rule of Civil Procedure 59(e). (Clerk's No. 21, No. 31).[1] Plaintiff also filed a motion for attorney fees and costs, which Defendant SSS resisted. (Clerk's No. 22). The Court referred the case to Magistrate Judge Celeste Bremer for settlement of all post-trial issues and stayed enforcement of the judgment against Defendant pending a settlement conference, which was held on April 3, 2003. After the parties were unable to come to a resolution at the settlement conference, the Court heard oral argument on all pending motions on April 14, 2003. These matters are now fully submitted.

## I. FACTUAL BACKGROUND

This case arose out of Plaintiff's employment with SSS as a member of SSS' support staff providing direct care services to KB, a twenty-one year old man with Down's Syndrome, who had moved from his parent's home to an assisted living home with two other residents. As presented more fully in the Court's Findings of Fact, KB began exhibiting inappropriate behavior toward Plaintiff after the move, which escalated over a period of several weeks between October 19, 2000 and November 6, 2000.

Three of the incidents involved physical contact. On October 20, 2000, KB kissed Ms. Van Horn on the cheek and then touched her breast while giving her a hug. On October 27, 2000, KB put his legs on Ms. Van Horn's lap. When Ms. Van Horn pushed his legs away and moved over to the couch, KB attempted to lay on top of her. While Ms. Van Horn extricated herself from the situation, she was pressed against the back of the couch, her legs were entangled with his, and he pinched her inner thigh, saying "oooh." After she had moved away, KB approached her from behind and put his arms around her neck. During the final incident, on November 6, 2000, KB grabbed Ms. Van Horn's breast and she instinctively slapped him. Ms. Van Horn reported each of these incidents in her regular daily summary reports, informed supervisory staff, requested training and assistance in dealing with KB's behavior, and also filed separate incident reports after the October 27 and November 6 incidents. However, SSS staff failed to respond to any of these reports, assist Plaintiff in dealing with KB's conduct, or otherwise address KB's increasingly aggressive sexual behavior. Instead, SSS fired Plaintiff for slapping KB, which it claims violated SSS' policy against punishment of clients. This lawsuit resulted.

Defendant's motion urges the Court to reverse its judgment against it on Plaintiff's retaliation claim, while Plaintiff moves the Court to reverse its judgment in favor of Defendant on the sexual harassment claim, to assess damages on that claim, and to award prejudgment interest. Plaintiff also requests an award of attorney fees and costs. The Court has reviewed the submissions of the parties on these motions and will consider each of these matters in turn.

1. Plaintiff's Motion does not challenge the Court's findings with respect to Fred Fridlin- gon, and any reference in this Opinion to "Defendant" shall refer solely to SSS.

## II. DISCUSSION

### A. Motion for Judgment as a Matter of Law

 At trial, Defendant moved at the close of Plaintiff's evidence and the close of all evidence for judgment as a matter of law, which was taken under consideration by the Court. These motions are properly viewed as motions for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c) rather than as motions for judgment as a matter of law under Federal Rule of Civil Procedure 50, which is applicable only in jury trials. *See Mullin v. Town of Fairhaven*, 284 F.3d 31, 36 (1st Cir.2002). On a motion for judgment on partial findings, the trial judge, as final factfinder, reviews all evidence presented as of the time of the motion without presumptions in favor of either party and may grant the motion if, on the evidence presented, the judge would find against the party that has already presented evidence and in favor of the moving party. *See Geddes v. Northwest Missouri State Univ.*, 49 F.3d 426, 429 (8th Cir.1995). Although the Court's Judgment did not contain an express ruling on these motions, its conclusions of law addressed their substance. Defendant has now renewed its motion for judgment as a matter of law, arguing that the judgment against it on the retaliation claim is unsupported by the weight of the evidence and rests on prejudicial errors of law. While there is no procedural parallel to a Rule 50(b) motion under Rule 52 where the Court has already declined to enter a judgment on partial findings, the Court now reaffirms the implicit ruling contained in its Judgment and, for the reasons set forth below in regard to Defendant's Motion to Alter or Amend the Judgment, denies Defendant's Motion for Judgment as a Matter of Law.

### B. Motions to Amend the Judgment, or in the Alternative for New Trial

 Both parties' motions to amend the judgment were timely filed pursuant to Federal Rule of Civil Procedure 59(e). A motion to amend under Fed.R. Civ. P. 59(e) may be granted to incorporate an intervening change in the law, to reflect new evidence previously unavailable, or to correct clear error or prevent manifest injustice. *See Servants of the Paraclete v. John Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir.1997). Thus, a Rule 59(e) motion is appropriate where the court misunderstood the facts, a party's arguments, or the controlling law. *See Servants of the Paraclete*, 204 F.3d. at 1012. *Cf.* Fed. R.App. P. 40(a)(2) (setting forth the grounds for rehearing). Neither party has challenged the Court's Findings of Fact and upon its own review, the Court has concluded that its factual findings shall stand without amendment. The issues before the Court on these motions concern the Court's articulation and application of the appropriate legal standards in its Conclusions of Law and the sufficiency of the evidence in support of the resulting judgment. Because the Court has determined that its Judgment should be amended in the manner set forth below and no further evidentiary findings are needed, the motions of the parties for new trial pursuant to Fed.R.Civ.P. 59(e) is denied.

#### 1. Sexual Harassment Claim Based on Hostile Work Environment

Plaintiff first argues on its Motion that the Court's statement of the appropriate legal standard for a sexual harassment claim based on an alleged hostile work environment was in error, in that it replaced the disjunctive "severe or pervasive" test with a "severe *and* pervasive"

test. Upon review, the Court finds that although it properly stated the disjunctive rule, as set forth in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), on page 21 of its opinion, there are several instances in which the Court inadvertently misstated the test using the conjunctive form. Therefore, any references to "severe and pervasive" in the Court's judgment shall hereby be amended to refer to "severe or pervasive."

Plaintiff has further argued that the Court did not adequately consider the extent of the physical contact Plaintiff experienced because its opinion refers to "three instances" of physical contact although multiple physical touchings occurred on three different days. The Court wishes to clarify that its references to three "instances," "occasions," or "incidents" of inappropriate touching were intended to refer what it viewed as an integrated sequence of events that occurred on each of the three days. (Judgment, at 21). The Court's Findings of Fact show that indeed, multiple touchings did occur during each such incident, for example, the kiss and the touching of Plaintiff's breast that followed it on October 20, and the Court has evaluated the overall effect of the circumstances that occurred during each such incident in reaching its conclusions.

The Court has also carefully considered the submissions of the parties and their arguments at hearing with regard to the sexual harassment claim and has determined that it properly held that Plaintiff "fails to satisfy the fourth requirement of establishing a sexual harassment claim." (Judgment, at 23). Nonetheless, the Court finds that its Conclusions of Law should be amended with regard to the basis for its holding, and in particular, with regard to the objective prong of the hostile work environment test.

■ As the Court has already stated, to prevail on her claim, Plaintiff must first show that the conduct at issue was sufficiently severe or pervasive so as to create a work environment which a reasonable person would view as hostile or abusive. *See* Judgment at 21, *citing Harris v. Forklift Systems,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). This assessment requires a consideration of the totality of the circumstances of the instant case. *See id., citing Harris,* 510 U.S. at 23, 114 S.Ct. 367. The Court believes that the conduct exhibited by KB cannot be deemed sufficiently pervasive, for the reasons set forth in its Judgment. (Judgment at 23). In its Judgment, the Court also found that neither the November 6 incident, nor any prior incidents, were sufficiently severe, either alone or together, to create an objectively hostile work environment. (Judgment at 22).

However, Plaintiff argues here that the physical nature of KB's harassment of Plaintiff and its escalation render it objectively severe enough to pass the "high threshold of actionable harm" under Title VII. *See Duncan v. General Motors Corp.,* 300 F.3d 928 (8th Cir.2002). In particular, Plaintiff asserts that the unwelcome physical contact Plaintiff experienced on October 27, 2000 was equally or more severe than the November 6 assault Plaintiff suffered, and that these incidents were sufficiently severe to render Plaintiff's work environment objectively discriminatory. Plaintiff has also pointed to a number of cases where isolated physical touching was deemed sufficient basis for a reasonable fact-finder to find a hostile work environment existed. (Plaintiff's Motion at 1–5).

The Court remains mindful of the fact that "[i]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275,

141 L.Ed.2d 662 (1998). *See also Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990 (8th Cir.2003) (finding a single instance of grabbed buttocks not severe enough to create a hostile work environment). However, upon reconsideration, the Court believes that its Judgment did not give due weight to the severity of the October 27, 2000 incident in concluding that Plaintiff's work environment was not objectively hostile. Therefore, the Court shall amend its Judgment to incorporate the following conclusions as to that incident.

■ The events of October 27, 2000, where KB attempted to lay on top of Plaintiff, pressed her against the couch, and pinched her thigh as she extricated herself from the situation, were undeniably a physical assault of a sexual nature. Moreover, the position in which Plaintiff found herself, struggling to get out from under a man whose legs were entangled with hers, was physically threatening and humiliating, and might well put a reasonable woman in fear of being raped. The Court now concludes that this incident, particularly when followed by the incident of November 6, created a work environment which a reasonable person would view as hostile. Therefore, the Court believes it erred in finding that "the November 6, 2000 incident is not alone, or together with the earlier conduct by the client, sufficiently severe enough to sustain a hostile work environment claim" and that "the objective prong of the hostile environment test cannot be satisfied in this case." (Judgment, at 21–22).

■ However, the Court remains of the view that the subjective element of Plaintiff's claim has not been satisfied in this case and believes the Judgment should be amended to make more explicit its conclusion in that regard. Based on Plaintiff's testimony at trial and in her incident report, the Court finds that KB's behavior was offensive to Plaintiff, that it caused her shame and embarrassment, that she viewed it as harassment, that she was concerned about its escalation, and that she was frustrated by SSS' lack of response to her reports. However, the Court nonetheless finds that Plaintiff has not sustained her burden as to the fourth prong of her sexual harassment claim because the evidence presented at trial did not show that Plaintiff subjectively viewed the harassment to have rendered her workplace environment hostile or abusive as of the time she was terminated. Plaintiff did not describe the October 27, 2000 incident in terms of an attack or sexual assault. Her testimony also portrayed it as a less serious incident than the touching of her breast on November 6, which the Court has found was not itself sufficiently severe to render her workplace objectively hostile. Further evidence that Plaintiff did not view the conduct to have altered the conditions of her employment is the fact that she hoped to continue working with KB and believed that measures could be taken to prevent future sexual advances and other inappropriate conduct. Over the limited period of time during which the conduct occurred, it did not appear that KB's conduct had impacted her work performance and she continued to respond to him professionally.

Because the Court believes that the evidence does not support a finding that Plaintiff subjectively perceived her work environment to be hostile or abusive, the Court's determination on the sexual harassment claim should stand, with amendments to the Judgment as set forth above. Accordingly, Plaintiff's Motion to Amend the Judgment as to the sexual harassment claim is granted in part and denied in part.

### 2. *Retaliation Claim*

The primary basis for the parties' motions is the dissonance they perceive in the

Court's conclusion that SSS had retaliated against Plaintiff even though the Court found the underlying harassment by KB was neither severe nor pervasive enough to find SSS liable for discrimination in failing to prevent or remedy a hostile work environment. Plaintiff argues that the Court's finding of retaliation necessitates a judgment in her favor on her hostile work environment claim, which the Court has addressed above. Defendant argues that the Court's finding for Defendant on the sexual harassment claim necessarily exonerates it on the retaliation claim. The Court rejects this contention as well.

■ Proof of a retaliation claim is not the same as a direct claim of discrimination. *Buettner v. Arch Coal Sales, Co., Inc.*, 216 F.3d 707, 714 (8th Cir.2000), *accord Foster v. Time Warner Entertainment Co.*, 250 F.3d 1189, 1195 (8th Cir. 2001) (ADA). To prevail on a retaliation claim, plaintiff "need not establish that the conduct which she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying challenged conduct violated the law." *Buettner*, 216 F.3d at 714. Although the Court did not previously rely on this rule in resolving plaintiff's retaliation claim, it now finds that Plaintiff believed KB's grabbing of her breast was unlawful sexual harassment at the time she slapped him and that this belief was both reasonable and in good faith. The fact that Plaintiff's slap was instinctive in no way undermines this conclusion, just as the victim of an attack is justified in taking reasonable acts in self-defense whether their belief that an assault is imminent or already being perpetrated is formed instantaneously or over a longer period of time. Because the Court finds that Plaintiff had a reasonable, good faith belief that KB's assault on her person was unlawful

sexual harassment, the Court reaffirms its conclusion that she is protected from retaliation for opposing it by slapping him.

■ However, the Court's opinion implied that the discrimination Plaintiff opposed by her act of self-defense was not KB's assault alone, but also the ongoing negligence of SSS in failing to address workplace harassment. Specifically, the Court stated that the "utter failure of SSS to address sexual harassment at the workplace constitutes discrimination under Title VII," and that Plaintiff's resistance was in opposition "against the discriminatory inaction of SSS." (Judgment at 29). Upon reconsideration, the Court believes that this conclusion was an error of law insofar as it found an employer's failure to respond to workplace harassment unlawful under Title VII even where, as here, Plaintiff has not established a *prima facie* case of sexual harassment. Such a result is indeed at odds with the Court's finding on Plaintiff's sexual harassment claim and effectively disregards the critical fourth prong of the Title VII analysis. Therefore, the Court hereby amends its Judgment to hold that Plaintiff's resistance was oppositional activity solely to the assault by KB, which Plaintiff reasonably believed to be prohibited harassment.

■ Nonetheless, SSS' negligence in failing to respond to workplace harassment constitutes a ratification of or acquiescence in the conduct of its client, which may therefore be imputed to SSS as if SSS had itself engaged in an unlawful employment practice, or one which the employee reasonably and in good faith believed to be unlawful. *See Faragher*, 524 U.S. at 789, 118 S.Ct. 2275 ("In [instances of third-party harassment], the combined knowledge and inaction [of the employer] may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the em-

ployer's policy"). *See also Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1112 (8th Cir. 1997) (finding the employer could be held liable for sexual harassment by a program resident where it had the ability to alter the workplace environment), *accord Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1074 (10th Cir.1998).[2] This conclusion is only bolstered by the Court's decision here that the conduct exhibited by KB was severe enough to render Plaintiff's workplace objectively hostile. Accordingly, Plaintiff is protected from retaliation by SSS when she opposed her client's harassment by engaging in self-defense, and the Court's determination on this claim shall not be disturbed. *See Excel v. Bosley*, 165 F.3d 635, 639 (8th Cir.1999) (finding employer liable for retaliation where it failed to remedy harassment and then terminated employee who acted in self-defense).

At hearing on these motions, Defendant SSS advanced a further challenge that SSS did not believe Plaintiff was protesting harassment by slapping KB, and that therefore, it could not be found to have retaliated against her for doing so. Defendant relies on *Cruz v. Coach Stores*, 202 F.3d 560, 566 (2nd Cir.2000), where the Second Circuit found that to make out a *prima facie* case of retaliation, the plaintiff must demonstrate "participation in protected activity known to the defendant." Since the court in *Cruz* found that plaintiff could not show that her employer knew she was acting in self-defense, it concluded that plaintiff could not prove that defendant's alleged justification for her termi-

nation—violation of its "no-assault" rule—was pretextual. *Id.*

██ However, Defendant's argument ignores a critical factor which distinguishes this case from *Cruz.* Here, unlike *Cruz,* Plaintiff has shown that SSS knew she was acting in self-defense. The Court finds this to be an obvious conclusion from the circumstances of the incident, of which SSS was clearly aware. Although SSS knew that Plaintiff had acted in self-defense against harassment by her client, SSS admitted to firing her for doing so. Plaintiff need not show that Defendant knew her act of self-defense was protected oppositional activity under Title VII, which Defendant clearly contests. Rather, the evidence must show only that Defendant knew that Plaintiff was acting to defend herself from harassment, which it had failed to remedy, and that her acts were reasonable under the circumstances. Thus, *Cruz* does not alter the Court's conclusion that Plaintiff has established a *prima facie* case of retaliation.

██ Finally, Defendant argues that the Court erred by failing to apply the *McDonnell–Douglas* balancing test and consider whether SSS' stated justification, violation of its no-punishments policy, was pretextual. Since SSS admitted it terminated Plaintiff for slapping her client, which the Court held to be protected oppositional activity, there was no dispute as to the reason for the termination which would necessitate further inquiry under the burden-shifting test.[3] *See Stone v. City of*

---

2. These cases adopt the standard set forth in EEOC regulations that an "employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action." 29 C.F.R. § 1604.11(e) (2003).

3. Defendant properly asserts that it did not "agree that it fired Ms. Van Horn for protected oppositional activity," as stated in the Court's Judgment, only that it admitted to firing her for slapping her client. (Judgment at 31). While the Court's Judgment conflated the two and the Court agrees that Defendant did not concede the termination was retaliatory, it believes the unintended implication that Defendant had in fact made such a conces-

*Indianapolis,* 281 F.3d 640, 643 (7th Cir. 2002) (concluding that where plaintiff can prove that protected activity resulted in his termination, then *McDonnell–Douglas* need not apply). Furthermore, it is clear that SSS cannot articulate a legitimate, nondiscriminatory reason for firing Plaintiff, and therefore there was no need for the Court to proceed further. SSS admitted that it fired Plaintiff for slapping her client, which was an act of self-defense against harassment that SSS failed to prevent or correct. The Eighth Circuit has clearly held that a termination under such circumstances is not "free from discrimination" and therefore any pretext analysis would be meaningless—Defendant's termination of Plaintiff was discriminatory, even if its real reason for terminating Plaintiff was in fact her violation of its "no punishments" policy. *See Bosley,* 165 F.3d at 639. For these reasons, Defendant's Motion to Alter or Amend the Judgment as to the retaliation claim is granted in part and denied in part.

### 3. *Damages*

Defendant further challenges the Court's award of compensatory, emotional distress, and punitive damages on a number of grounds. As addressed further below, the Court does not find the damages awarded in this case were in error or resulted in manifest injustice.

■ Defendant argues that the Court erred in awarding compensatory damages for the added costs of Plaintiff's commute following her termination and that the award failed to take into account the greater income earned by Plaintiff in her new position, which should have mitigated such damages. In arriving at its compensatory damage award, the Court considered the higher wages Plaintiff earns in her new position, but concluded they do not outweigh the substantial inconvenience, ex-

cess mileage, and lost time Plaintiff has incurred and will incur in future as a result of her termination. At the time of her termination, Plaintiff had no intention of leaving SSS' employ and thus the Court concluded that some compensatory damages for future losses were justified, although it found the requested $76,000 in future costs excessive. As Plaintiff is entitled to recover for past and future losses occasioned by her termination, the Court awarded all commuting-related costs through 2003, but denied over $60,000 of additional such costs requested by Plaintiff for 2004 to 2007. The Court does not believe this award was in error.

■ Defendant further argues that insufficient evidence was presented to support an award of emotional distress damages. The Court, however, finds that Plaintiff presented substantial testimony regarding the impact the termination has had on her personality, her fear of losing her house after she was fired, and the fear she still experiences of "doing the wrong thing," which continues to impact her ability to work with her current clients. For these reasons, as well as those set forth in its Judgment, the Court believes that Plaintiff is entitled to the award of emotional distress damages for her suffering as a result of the retaliatory termination and that the amount awarded was not unreasonable. Although the amount of the award shall remain unchanged, the Judgment shall be amended insofar as it grounds emotional damages on harms unrelated to the retaliatory termination itself.

■ Finally, Defendant challenges the sufficiency of the evidence in support of punitive damages, and argues in particular, that no evidence was shown concerning Defendant's financial condition on which to base a punitive damages award.

sion is remedied by the more complete discus- sion here.

The Court acknowledges that a plaintiff in an employment discrimination case bears a heavy burden to demonstrate "malice" or "reckless indifference" to the plaintiff's federally protected rights such that punitive damages are justified. *See Webner v. Titan Distribution, Inc.*, 267 F.3d 828, 837 (8th Cir.2001) (citations omitted). In addition, the Supreme Court has identified specific situations in which, despite the employer's discrimination, an award of punitive damages is not appropriate: 1) the employer is unaware of the relevant federal prohibition; 2) the employer discriminates in the belief that the discrimination is lawful; 3) the underlying theory of discrimination may be novel or poorly recognized; 4) the "employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536–37, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). None of these factors apply here. There is no evidence that SSS was unaware that retaliation was prohibited or that it believed KB's assault of Plaintiff, which it ratified by its negligence, was lawful. The Court's holding not only comports with the common sense reaction of witnesses in this case, including KB's mother, that the termination was unjustified, but is also far from "novel" in recognizing the responsibility of an employer to remedy workplace harassment rather than firing the victim. There is no issue in this case concerning occupational qualifications. The Court's award is also in keeping with the requirements of Iowa law that punitive damages only be awarded where actual or legal malice is shown. Iowa Code § 668A.1(1)(a) (2001) (requiring "willful and wanton disregard for the rights ... of others"); *McClure v. Walgreen Co.*, 613 N.W.2d 225, 231 (Iowa 2000) (defining "legal malice" which may justify punitive damages as "wilful or reckless disregard for another's rights"). The facts relied on by the Court in its Judg-

ment evidence legal malice on the part of SSS.

 Thus, the Court believes the evidence set forth in its Judgment regarding the reckless indifference of SSS to the rights of Plaintiff is sufficient basis for an award of punitive damages under both Title VII and the ICRA and that an award of $20,000, which is less than half of the compensatory damage award, is reasonable on the facts of this case. A plaintiff need not establish egregious misconduct on the part of an employer in order for the fact-finder to award punitive damages. *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1048 (8th Cir.2002), *citing Madison v. IBP, Inc.* 257 F.3d 780, 795 (8th Cir.2001). Rather, the magnitude of a punitive damages award should take into account "the degree of reprehensibility of the defendant's conduct; the ratio or relationship between actual harm inflicted on plaintiff and the punitive damages award; and civil penalties authorized for comparable misconduct." *Id.* at 1048–49, *citing BMW of North America, Inc. v. Gore*, 517 U.S. 559, 572–74, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). In addition to the reasons set forth in its Judgment, the summary manner in which SSS terminated Plaintiff, who by all accounts was an excellent employee, the fact that the termination was done over the wishes of KB's mother, and the utter disregard for the rights of Plaintiff and other SSS employees which Mr. Fridlington exhibited at trial all weighed heavily in its decision to award punitive damages. Finally, Iowa law does not require a plaintiff to prove a defendant's financial worth before it can recover punitive damages. *Economy Roofing and Insulating Co. v. Zumaris*, 538 N.W.2d 641, 653–54 (Iowa 1995). *See also Latham Seed Co. v. Nickerson Am. Plant Breeders, Inc.*, 978 F.2d 1493, 1499 (8th Cir.1992) (reviewing Indiana, Iowa,

Michigan, and Ohio law on this point). For these reasons, the Court declines to amend its Judgment with regard to punitive damages.

### 4. *Prejudgment Interest*

 The Court's Judgment was entered for $82,091.86, plus costs. Plaintiff's Motion to Amend now requests that the Judgment be amended to include an award of prejudgment interest from the date the Complaint was filed. An award of prejudgment interest to the prevailing party on a federal claim is within the discretion of the court. *Val–U Construction Co. v. Rosebud Sioux Tribe*, 146 F.3d 573, 582 (8th Cir.1998). Absent exceptional circumstances, it is generally awarded "when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of money which was legally due." *Stroh Container Co. v. Delphi Industries, Inc.*, 783 F.2d 743, 752 (8th Cir.1986). Here, however, the Defendant's liability was not ascertainable until judgment issued, and thus Plaintiff has not been deprived of money which was legally her due.

 Plaintiff also argues that prejudgment interest should be awarded as a matter of right, since she has prevailed on her retaliation claim under both the ICRA and Title VII. Section 535.3(1) of the Iowa Code provides that "interest shall be allowed on all money due on judgments and decrees of court at a rate calculated according to section 668.13." Iowa Code Section 668.13(1) provides that prejudgment interest shall accrue from the date of commencement of the action. However, the Iowa Supreme Court has held that the statutory reference in Section 535.3 to Section 668.13 incorporates only the applicable rate for awarding interest, not the provision of that section allowing interest to accrue from the date of commencement. *Schimmelpfennig v. Eagle Nat. Assur. Corp.*, 641 N.W.2d 814, 815 (Iowa 2002). In the same case, it also reiterated the general rule that "interest runs from the time money becomes due and payable, and in the case of unliquidated claims, this is ... ordinarily the date of judgment." *Id.* at 816 (quoting *Midwest Management Corp. v. Stephens*, 353 N.W.2d 76 (Iowa 1984)). Accordingly, Plaintiff here is not entitled to prejudgment interest under either federal law or the Iowa Code.

### C. Attorney Fees and Costs

Plaintiff's counsel's motion for attorney fees and expenses, as supplemented on April 14, 2003, requests an award of $40,410 in attorney's fees, including $245 for investigative work performed by legal assistants. A prevailing plaintiff is entitled to recover reasonable attorney fees and costs under both Title VII and the ICRA. 42 U.S.C. § 2000e–5k; Iowa Code § 216.15(8)(a)(8)(2001).

 The starting point for an assessment of the reasonableness of the requested fees is the "lodestar," defined as "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Blum v. Stenson*, 465 U.S. 886, 891, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Plaintiff's counsel submitted to the Court that their regular hourly rate is $150. While Defendant's counsel acknowledges the professionalism and cooperativeness of Plaintiff's counsel and believes the requested hourly rate is reasonable, he argues that the fee request is excessive given the length of the trial and the efficiency of the proceedings. In light of the extensive experience of Plaintiff's counsel, the successful outcome they achieved on behalf of their client, their willingness to take Plain-

tiff's case on a contingent basis, and the dedicated, quality representation which they demonstrated throughout the course of this litigation, the Court concludes that Plaintiff's counsel are entitled to an award of the full amount of attorney fees requested. *See Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933 (citing the relevant factors that inform a court's reasonableness assessment). Plaintiff's counsel is also entitled to the full amount of the requested fees incurred for the work of legal assistants performed in this case. *Miller v. Alamo,* 983 F.2d 856, 862 (8th Cir.1993). "Work done by paralegals is compensable if it is work that would have been done by an attorney. If such hours were not compensable, then attorneys may be compelled to perform the duties that could otherwise be fulfilled by paralegals, thereby increasing the overall cost of legal services." *Id.* Thus, the Court will award Plaintiff $40,410 in attorney fees.

 Pursuant to Fed.R.Civ.P. 54(d)(1) Plaintiff has filed a bill for taxable costs authorized in 28 U.S.C. § 1920 in the amount of $2,050.78. Defendant resisted the imposition of a portion of those costs and the Clerk of Court has assessed $1,453.63 in taxable costs against SSS. (Clerk's No. 43). Plaintiff's Motion, as amended, seeks to recover an additional $1,692.81 in non-taxable costs. Expenses that are reasonable, necessary, and customarily billed to clients in the relevant economic market are properly compensable as part of a fee award. *See Pinkham v. Camex, Inc.,* 84 F.3d 292, 294–95 (8th Cir.1996); *U & I Sanitation v. City of Columbus,* 112 F.Supp.2d 902, 906 (D.Neb. 2000). However, in this circuit, "computerized legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award." *See Standley v. Chilhowee R–IV Sch. Dist.,* 5 F.3d 319, 325 (8th Cir.1993). Accordingly, the Court will deduct the $442 in electronic research

costs incurred by Plaintiff's counsel. The balance of $1250.81 shall be assessed against Defendant.

### III. ORDER

Defendant's Motion for Judgment as a Matter of Law is **denied.** (Clerk's No. 31) Defendant's Motion to Alter or Amend Judgment is **granted in part** and **denied in part.** (Clerk's No. 31). Defendant's Motion for New Trial (Clerk's No. 31) is **denied.** Plaintiff's Motion to Amend Judgment (Clerk's No. 21) is **granted in part** and **denied in part.** Plaintiff's Motion for New Trial (Clerk's No. 21) is **denied.** The Court's Findings of Fact, Conclusions of Law, and Judgment dated January 29, 2003 (Clerk's No. 18) shall be amended consistent with this Order.

IT IS SO ORDERED.