Yao Etienne KOUAKOU, Plaintiff,

v.

FIDELISCARE NEW YORK,
Defendant.

No. 11 Civ. 6714 (RJS).

United States District Court,
S.D. New York.

Dec. 17, 2012.

**394**

Yao Etienne Kouakou, pro se.

Frank Rinaldi, Esq., Rego Park, NY, for Defendant.

## MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge.

Plaintiff Yao Etienne Kouakou brings this action against New York State Catholic Health Plan, Inc., d/b/a Fideliscare New York ("Defendant"), alleging employment discrimination, retaliation, and a hostile work environment, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–17. Before the Court is Defendant's motion for a judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). For the reasons that follow, the Court grants Defendant's motion.

1. The following facts are taken from Plaintiff's Complaint, Plaintiff's Charge of Discrimination filed with both the New York State Division of Human Rights and the United States Equal Opportunity Commission (the "EEOC Charge"), and Defendant's Answer. Because the EEOC Charge is part of an administrative proceeding, the Court may take judicial notice of it without converting Defendant's motion into a motion for summary judgment. *See, e.g., Muhammad v. NYCTA,* 450 F.Supp.2d 198, 205 (E.D.N.Y.2006) (noting that plaintiff's EEOC charge and agency's determination are public records, of which Court may take judicial notice). In consideration of the instant motion, the Court also considers Defendant's opening brief ("Def.'s Br."), Plaintiff's opposition brief ("Pl.'s Br."), Defendant's reply brief ("Reply"), and any affidavits and declarations submitted in connection with the instant motion to the extent that they attach exhibits incorporated by reference in

## I. BACKGROUND

### A. Facts

▮ Defendant is a New York non-profit corporation offering low-cost health insurance through government programs such as Family Health Plus, Child Health Plus, and Medicaid Managed Care.[1] (Def.'s Br. 3–4.) Plaintiff was employed by Defendant as a marketing representative from June 2008 until his involuntary discharge on August 20, 2010.[2] (Compl. 3–3(2);[3] *see* Aff. of Yao Etienne Kouakou, dated July 17, 2012, Doc. No. 34 ("Kouakou Aff"), Ex. A. ("EEOC Charge") at 1.)[4] Plaintiff alleges that during his employment, Defendant discriminated against him because he was the only African marketing representative and the remainder of the marketing department was Hispanic. (*See* Compl. 3–3(2); EEOC Charge 1.) Specifically, Plaintiff alleges that his former supervisor, Hector Hernandez ("Hernandez"), constantly spoke in Spanish with another supervisor, Efrain Vargas ("Vargas"), making Plaintiff feel uncomfortable. (*Id.*)

the Complaint or are subject to judicial notice.

2. Plaintiff has alleged two different dates for his termination: August 19, 2010 (EEOC Charge 1) and August 20, 2010 (Compl. 3–3(2)). Because the precise date—whether August 19 or 20—does not impact the Court's analysis, the Court assumes for purposes of the instant motion that Plaintiff was terminated on August 20, 2010, the date stated in his Complaint. (Compl. 3–3(2).)

3. Plaintiff's Complaint includes an addendum to page three, to which the Court refers as "3(2)."

4. Although Plaintiff's affidavit is sworn, it has not been notarized. (*See* Kouakou Aff. at 1.) Nonetheless, such an affidavit is admissible because it was signed "under the penalties of perjury." *See Hameed v. Pundt,* 964 F.Supp. 836, 840–41 (S.D.N.Y.1997).

At some point in 2008, Plaintiff requested, but was denied, a transfer from Hernandez's team. (*See* Compl. 3; EEOC Charge 1.) According to Plaintiff, after the transfer request, Hernandez "turned the marketing department against [him]" and "falsely accused [him] of creating a fraudulent application" for a government healthcare program in an effort to "get [him] fired for insubordination and other allegations." (EEOC Charge 1.) Plaintiff also alleges that Hernandez "forced [him] to sign a disciplinary letter saying that [he] did not meet the [sales] quota requirements," which Plaintiff claims was untrue. (*Id.*) Defendant terminated Hernandez after Plaintiff allegedly showed the letter to Defendant's Human Resources Department. (*Id.*) Plaintiff alleges that, following Hernandez's termination, Defendant's marketing department became "angry and retaliated against [him]." (*Id.*) For instance, Vargas allegedly forced Plaintiff to "sign documents saying [that] if [Plaintiff] ended up back in [Vargas's] office again, [he] would be terminated."[5] (*Id.*) Another supervisor, Ana Roposo, also allegedly "continued [Plaintiff's] mistreatment," and on one occasion, Vargas called Plaintiff an "Africano negro." (Compl. 3(2).) Moreover, other co-workers allegedly "verbally attacked [Plaintiff] and were closer to physically harm[ing him] at work in support of their cause as Spanish." (*Id.*)

Plaintiff also alleges that he was involved in two specific confrontations with his co-workers over gifts that were frequently made available for marketing representatives to give to their clients. First, on March 23, 2010, Plaintiff was allegedly "in a heated confrontation" with a co-worker named Conrad De Leon and a "truck driver" named "Freddy." (*Id.;* EEOC Charge 2.)[6] Plaintiff asked Freddy if he had any giveaway gifts for the applicants whom Plaintiff had processed, and Freddy replied, "I don't have any giveaways for you[,] only for my people," which Plaintiff believed to be a reference to Hispanic marketing representatives and/or applicants. (EEOC Charge 2.) According to Plaintiff, when "Spanish applicants" arrived, Freddy gave them gifts. (*Id.*)

Second, on April 15, 2010, Plaintiff was involved in a "heated confrontation with another truck driver," Efrain Vargas, Jr. ("Vargas, Jr."), regarding gift giveaways. (*Id.*) By Plaintiff's account, Vargas, Jr., when asked about the gift giveaways, responded in the same fashion as Freddy had several weeks earlier, stating that he had giveaways only "for [his] people." (*Id.*) Allegedly, "[w]hen the Spanish applicants came, [Vargas, Jr.,] gave all of them many gifts." (*Id.*) According to Plaintiff, although Plaintiff notified his supervisor about both the March and April 2010 incidents, his supervisor "chose to do nothing about them." (*Id.*)

Plaintiff also alleges that he was "investigat[ed]" for submitting another "fraudulent application," which resulted in Plaintiff's involuntary termination. (*Id.*) According to Plaintiff, he never received a formal letter stating the outcome of the investigation. (*Id.*) Furthermore, Plaintiff alleges that other marketing representatives were "suspected of creating fraudulent applications[,] and they were not disciplined, investigated, or fired." (*Id.*)

### B. Procedural History

Plaintiff filed his EEOC Charge on December 14, 2010 and received his right to

---

**5.** Plaintiff offers no indication of what these "documents" were.

**6.** It is unclear from the pleadings what were the precise roles of these individuals and how truck drivers employed by Defendant interacted with the personnel in Defendant's marketing department.

sue letter on July 1, 2011. He initiated the instant action by filing his Complaint on September 23, 2011. On March 6, 2012, Defendant filed its Answer. Defendant filed the instant motion on June 19, 2012, and the motion was fully submitted as of July 30, 2012. On August 29, 2012, the Court heard oral argument on the motion.

## II. DISCUSSION

### A. Legal Standards

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed.R.Civ.P. 12(c). Courts evaluate such a motion under the same standard as a motion pursuant to Rule 12(b)(6) for failure to state a claim. *See Nicholas v. Goord*, 430 F.3d 652, 658 n. 8 (2d Cir.2005). Thus, a court must accept all well-pleaded allegations contained in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007); *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998).

■ "When matters outside the pleadings are presented in support of, or in opposition to a [Rule 12(c)] motion, a district court must either exclude the additional material and decide the motion on the [pleading] alone or convert the motion to one for summary judgment under [Rule 56] and afford all parties the opportunity to present supporting material." *Stephens v. Bayview Nursing & Rehabilitation Ctr.*, No. 07 Civ. 0596(JFB)(AKT), 2008 WL 728896, at *2 (E.D.N.Y. Mar. 17, 2008) (internal quotation marks omitted). "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a [Rule 12(c)] motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment." *Id.* (internal quotation marks omitted); *see* Fed.R.Civ.P. 12(d). Here, because discovery remains ongoing, the Court declines to convert Defendant's motion into a Rule 56 motion for summary judgment. *Cf. Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."). Accordingly, the Court will not consider anything "submitted by either party, by affidavit or otherwise, outside of the [c]omplaint and [a]nswer." *Viacom Int'l Inc. v. Time Inc.*, 785 F.Supp. 371, 375 (S.D.N.Y.1992); *see, e.g., Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.*, 820 F.Supp.2d 490, 494 n. 2 (S.D.N.Y.2011) (declining to convert a Rule 12(c) motion into a Rule 56 motion); *Labajo v. Best Buy Stores, L.P.*, 478 F.Supp.2d 523, 530 (S.D.N.Y.2007) (same).[7]

7. Defendant dedicates much of its brief to arguments based on declarations and exhibits submitted in connection with the instant motion but not referenced within the pleadings. For example, Defendant discusses at length its enrollment and compliance policies (Def.'s Br. 6), offers facts about a previous investigation of fraud concerning Plaintiff's activities (*id.* 8), provides information about Hernandez's departure (*id.* 8–9), and discusses the 2010 investigation that led to Plaintiff's termination (*id.* 9 12). Defendant also attaches its code of conduct, its employment policies, information regarding its training program, and examples of supposedly fraudulent applications submitted by Plaintiff. (Decl. of Frank Rinaldi, dated June 15, 2012, Doc. No. 31, Exs. E–H.) However, because neither the affidavit testimony nor exhibits are referenced within the Complaint or EEOC Charge, the Court may not consider them without converting the instant motion into a motion for summary judgment. *Cf. Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) ("[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint

■ Although a plaintiff alleging employment discrimination need not plead facts sufficient to establish a prima facie case, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citation omitted). To state a legally sufficient claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

■ Where a plaintiff proceeds *pro se*, a court must liberally construe the complaint and " 'interpret [it] to raise the strongest arguments that [it] suggests.' " *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). "The policy of liberally construing *pro se* submissions" arises out of the understanding that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.2007) (internal quotation marks omitted).

### B. Title VII Claims

■ Although there are a number of different theories under which a Plaintiff may establish a Title VII violation, "[i]t is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's ... protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Here, although Plaintiff appears to *explicitly* bring claims for only race or national origin discrimination and retaliation (*see* Compl. 3; EEOC Charge 2), the Court construes the Complaint and EEOC Charge liberally to find that they also assert a hostile work environment claim. *See Cruz v. Coach Stores*, 202 F.3d 560, 568 (2d Cir.2000) ("[W]e find that although the complaint did not refer specifically to 'hostile work environment harassment,' it did describe the harassment [plaintiff] experienced in enough detail to put the claim before the court."). The Court discusses each of these three claims in turn.

### 1. Race and National Origin Discrimination

■ Under Title VII of the Civil Rights Act of 1964, it is unlawful to "fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (emphasis added). "In order to survive a motion to dismiss, allegations of employment discrimination under Title VII must make out a plausible claim that a plaintiff experienced discrimi-

---

is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."). The Court declines to do so and,

as stated above, will not consider anything submitted outside of the pleadings or any arguments based upon those excluded documents.

nation effected either [ (1) ] through disparate treatment of members of a protected group or [ (2) ] through a facially neutral classification that resulted in a disparate impact on a protected group." *Samuels v. William Morris Agency,* No. 10 Civ. 7805(DAB), 2011 WL 2946708, at *2 (S.D.N.Y. July 19, 2011) (internal quotation marks omitted). Plaintiff's Complaint and EEOC Charge appear to attempt to make out a claim only under the first of these theories.

To establish a prima facie case of discrimination based upon a theory of disparate treatment, a plaintiff must demonstrate "(1) that he belonged to a protected class, (2) that he was qualified for the position he held, (3) that he suffered an adverse employment action, and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Feingold v. New York,* 366 F.3d 138, 152 (2d Cir.2004). As noted above, Plaintiff is not required to establish a prima facie case at the pleading stage. *See Swierkiewicz,* 534 U.S. at 515, 122 S.Ct. 992. However, "[a] claim for discrimination under Title VII is properly dismissed where the plaintiff fails 'to plead any facts that would create an inference that any adverse action taken by any defendant was based upon [a protected characteristic of the plaintiff].'" *Williams v. Time Warner Inc.,* 09 Civ. 2962(RJS), 2010 WL 846970, at *3 (S.D.N.Y. Mar. 3, 2010) (quoting *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir.2007)); *cf. Gillman v. Inner City Broad. Corp.,* No. 08 Civ. 8909(LAP), 2009 WL 3003244, at *5–6 (S.D.N.Y. Sept.

18, 2009) (finding that plaintiff's allegations did not "present a facially plausible employment discrimination claim" because plaintiff presented only "conclusory and irrelevant facts in support of his age discrimination claim").

Here, Defendant does not dispute that Plaintiff has adequately alleged: (1) Plaintiff's membership in a protected class, whether based on race or national origin; (2) Plaintiff's qualification for the position that he held; or (3) Defendant's adverse employment actions against Plaintiff, including denying his transfer and ultimately terminating him.[8] (*See* Def.'s Br. 16–17; Reply 3–4.) Instead, Defendant argues that there is nothing in the Complaint or EEOC Charge that would create the inference that the adverse employment action was taken against Plaintiff because of his race or national origin. (*Id.*) The Court agrees.

The only allegations in either the Complaint or EEOC Charge that possibly relate to Defendant's motivation for denying Plaintiff's requested transfer in 2008 are that the entire marketing department was Hispanic, his supervisors spoke to each other in Spanish, and Vargas once called him an "Africano Negro." (Compl. 3(2); EEOC Charge 1.) These allegations alone do not create an inference that the denial of Plaintiff's requested transfer were motivated by his race or national origin, particularly where Plaintiff has not alleged that his employer granted the transfer requests of other " 'similarly situated employee[s] outside of [Plaintiff's racial] group.'"[9] *Ganzy v. Sun Chem.*

---

8. A denial of a request to transfer may be considered an adverse employment action. *Stewart v. City of New York,* No. 11 Civ. 6935(CM), 2012 WL 2849779, at *8 (S.D.N.Y. July 10, 2012).

9. In his opposition brief, Plaintiff states that while Defendant denied his request for a transfer, it granted those of Plaintiff's "[t]hree

Spanish co-workers (from the Dominican Republic)." (Pl.'s Br. 9.) However, even assuming the truth of Plaintiff's statement, the Court will not consider it because neither the Complaint nor the EEOC Charge makes any mention of the transfer of Plaintiff's co-workers. *See, e.g., Viacom Int'l Inc. v. Time Inc.,* 785 F.Supp. at 375.

*Corp.*, No. 06 Civ. 3424(FB)(MDG), 2008 WL 3286262, at *6 (E.D.N.Y. Aug. 8, 2008) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000)); *see also Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) ("Statistics alone do not suffice to establish an individual disparate treatment claim for a very good reason: the particular plaintiff must establish *he* was the victim of racial discrimination."); *Samuels*, 2011 WL 2946708, at *3 (dismissing plaintiff's disparate treatment claim where plaintiff failed to plead facts giving rise to an inference of discrimination).

▮▮▮▮ Likewise, Plaintiff's confrontations with co-workers in March and April of 2010 do not demonstrate disparate treatment in connection with his ultimate termination because they reflect, at most, the motivations of his co-workers and not those of his employer who ultimately terminated his employment. *See Campbell v. Alliance Nat'l Inc.*, 107 F.Supp.2d 234, 247 (S.D.N.Y.2000) (holding that isolated comments made by non-decisionmakers are not probative of discriminatory intent); *see also Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 545 (3d Cir.1992) ("Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."). Significantly, personality disputes with co workers, like those here, are not automatically transported into the realm of discrimination by an employer merely because the co-workers were of a different race. *See, e.g., Williams*, 2010 WL 846970, at *4 (dismissing plaintiff's complaint where "its generic factual allegations show[ed] workplace difficulties entirely consistent with non-race-, non-gender-based personality disputes— disputes that are plainly not actionable under statutes intended to root out discrimination on the bases of certain statutorily defined protected characteristics");

*Tappe v. Alliance Capital Mgmt. L.P.*, 177 F.Supp.2d 176, 184 (S.D.N.Y.2001) ("[A]n employer can fire an employee for any reason as long as the reason is non-discriminatory even if based on reasons that are 'unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility.' " (quoting *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1337 (2d Cir. 1997))).

Although Plaintiff alleges that his co-workers reserved their gift giveaways only for "[their] people" (EEOC Charge 2), he fails to plead the precise roles of these co-workers, their typical workplace interactions with Plaintiff, or how the isolated comments of his co-workers resulted in the termination of his employment four-to-five months later. *See, e.g., Sheridan v. N.Y. Life Inv. Mgmt., LLC*, No. 09 Civ. 4746(KBF), 2012 WL 474035, at *7 (S.D.N.Y. Feb. 9, 2012) (holding that comment made "nearly four months prior to" disciplinary action was insufficient to support an inference of discriminatory intent); *Buckman v. Calyon Sec. (USA) Inc.*, 817 F.Supp.2d 322, 335–36 (S.D.N.Y.2011) (holding that comment made five months before termination "is not probative of whether [plaintiff] was discharged because of his race"); *Campbell*, 107 F.Supp.2d at 247 (finding isolated, stray remark insufficient to establish discriminatory animus). Thus, without more, Plaintiff's Complaint simply fails to sufficiently plead facts that support an inference of discriminatory intent.

Accordingly, the Court grants Defendant's motion as to Plaintiff's discrimination claim.

### 2. Retaliation

Title VII also prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this sub-

chapter." 42 U.S.C. § 2000e–3. The Second Circuit has held that, to state a claim for retaliation under Title VII, a plaintiff must plead facts demonstrating that: "(1) [he] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane*, 508 F.3d at 115. Defendant challenges Plaintiff's retaliation claim, arguing that Plaintiff has not alleged that he was engaged in any protected activity when he was terminated and that there is no causal relationship between the termination and any supposedly protected activity. (Def.'s Br. 20.) The Court addresses each argument below.

### a. Protected Activity

■■ A protected activity is one that "protest[s] or oppose[s] statutorily prohibited discrimination." *Cruz*, 202 F.3d at 566; *accord Treglia v. Town of Manlius*, 313 F.3d 713, 719–20 (2d Cir.2002) ("[Plaintiff's] attempts to assert his rights against discrimination are protected activities, including his alleged complaints to [his supervisor], his ultimate filing of federal and state administrative charges[,] … and his efforts … to investigate his claims."); *cf. Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir.2001) ("[The] filing of a complaint [alleging discrimination] with the EEOC is an activity protected by the ADA."). "[O]pposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection." *Cruz*, 202 F.3d at 566. However, in order to prove that actions were taken to protest or oppose statutorily prohibited activity, Plaintiff must demonstrate that he had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134 (2d Cir.1999); *accord Kessler v. Westchester*

*Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 211 (2d Cir.2006).

■■ In support of his retaliation claim, Plaintiff argues that he reported Hernandez to Defendant's Human Resources Department. (Pl.'s Br. 10.) However, at no point in either the Complaint or the EEOC Charge does Plaintiff allege that he reported any *statutorily* prohibited behavior by Hernandez. *See Cruz*, 202 F.3d at 566. Rather, Plaintiff's Complaint, at least as currently written, appears to relate only to a personality dispute with Hernandez. Therefore, Plaintiff's reporting of Hernandez's conduct cannot be considered a "protected activity" within the meaning of Title VII. *See Cruz*, 202 F.3d at 566.

■■ Nonetheless, in the EEOC Charge, Plaintiff *does* indicate that he reported to his supervisor the two confrontations that he had with De Leon, Freddy, and Vargas, Jr., in which his co-workers allegedly indicated that they had gift giveaways only for "[their] people" and refused to give the gifts to "Black applicants" whom Plaintiff had processed. (EEOC Charge 2.) In light of this allegation, Plaintiff has adequately pleaded that he reported to his employer his good faith, reasonable belief that the actions of his co-workers violated the law. Accordingly, the Court finds that he has satisfied the protected activity prong.

### b. Causal Connection

■■ Even so, Plaintiff has not adequately pleaded a causal connection between that protected activity and an adverse employment action taken against him. (*See* Def.'s Br. 20.) The Second Circuit has held that a plaintiff must plead a causal connection either (1) directly, by alleging facts of a retaliatory animus directed by a defendant against a plaintiff, or (2) indirectly, by showing that "the protected activity was followed closely by dis-

criminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Gordon v. N.Y.C. Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000); *see also Pinkard v. N.Y.C. Dep't of Educ.,* 11 Civ. 5540(FM), 2012 WL 1592520, at *9 (S.D.N.Y. May 2, 2012) (dismissing plaintiff's retaliation claim because plaintiff failed to allege any facts indicating that defendant's actions were "motivated by unlawful discrimination or retaliation").

Here, Plaintiff has not pleaded any allegations of a *direct* causal connection between his complaint to his supervisor about his confrontations over gift giveaways in March and April 2010 and his ultimate discharge in August 2010. The Court therefore considers whether Plaintiff has sufficiently pleaded *indirect* allegations of a causal connection, applying the only standard by which Plaintiff could still plead a causal connection: "that the protected activity was closely followed in time by the adverse [employment] action." *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1178 (2d Cir.1996).

 While the Second Circuit has articulated no "bright line" rule for when an alleged retaliatory action occurs too far in time from the protected activity to be considered causally connected, *Gorman–Bakos v. Cornell Co-op. Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001), it is well settled that when "mere temporal proximity" is offered to demonstrate causation, the protected activity and the adverse action must occur "very close" together, *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (internal quotation marks omitted). "[D]istrict courts within the Second Circuit have con-

sistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of NY.,* 528 F.Supp.2d 257, 275 (S.D.N.Y. 2007) (collecting cases); *accord Ragin v. E. Ramapo Cent. Sch. Dist.,* No. 05 Civ. 6496(PGG), 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010).

Here, Plaintiff's confrontations with his co-workers occurred in March and April of 2010, and it appears from the EEOC Charge that Plaintiff reported the incidents to his supervisor around the same time. (EEOC Charge 2.) Defendant did not terminate Plaintiff's employment until August 20, 2010—approximately four months following his alleged complaint about his co-workers and well outside of the acceptable outer limits for demonstrating a temporal proximity to the protected activity.[10] *See Murray,* 528 F.Supp.2d at 275. Thus, because Plaintiff cannot satisfy the causation requirement necessary to plausibly state a retaliation claim, the Complaint fails to state a claim upon which relief can be granted. Accordingly, the Court grants Defendant's motion as to Plaintiff's retaliation claim.

### 3. Hostile Work Environment

As stated above, although Plaintiff does not appear to *explicitly* bring a claim for a hostile work environment, the Court reads the Complaint and EEOC Charge liberally to find that Plaintiff makes such a claim. The Second Circuit has held that:

> [t]o state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or per-

**10.** Assuming *arguendo* that Plaintiff's reporting of Hernandez was a protected activity, Plaintiff's retaliation claim would *still* fail because Plaintiff did not suffer a subsequent adverse employment action—his termination—until approximately two years later. *See Murray,* 528 F.Supp.2d at 275.

vasive [-] that is[,] . . . [it] creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic].

*Patane*, 508 F.3d at 113 (internal quotation marks omitted); *see also Martinez v. City of New York*, 338 Fed.Appx. 71, 73 (2d Cir.2009) ("To establish a *prima facie* hostile work environment claim, the plaintiff must first show that his workplace 'was permeated with discriminatory intimidation, ridicule, and insult,' that was 'sufficiently severe or pervasive to alter the conditions' of the victim's employment and create ·an abusive working environment." (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir.2003))); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.1999) ("A plaintiff must . . . demonstrate that [he] was subjected to the hostility because of [his] membership in a protected class.").

■■■■ To determine whether a work environment is objectively hostile or abusive, courts employ a totality-of-the-circumstances test, which considers " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Acosta v. City of New York*, No. 11 Civ. 856(KBF), 2012 WL 1506954, at *7 (S.D.N.Y. Apr. 26, 2012) (quoting *Harris v. Forklift, Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks omitted)). The Second Circuit has held that "[i]solated instances of harassment ordinarily do not rise" to the level of "objective[ ] hostil[ity]"; rather, a plaintiff must demonstrate either a single incident that was "extraordinarily severe" or a series of incidents that were "sufficiently continuous

and concerted." *Cruz*, 202 F.3d at 570; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("[C]onduct must be extreme to amount to a change in the terms and conditions of employment."). "Isolated, minor acts or occasional episodes do not warrant relief." *Brennan*, 192 F.3d at 318; *see also Feingold*, 366 F.3d at 150 ("As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." (citation and internal quotation marks omitted)).

■■■■ Here, the alleged discriminatory acts in the Complaint and EEOC Charge are few and far between and occurred over the course of multiple years. Specifically, Plaintiff alleges that from 2008 to 2010: (1) his supervisors spoke to each other in Spanish; (2) Vargas once called him an "Africano Negro"; (3) he was "verbally attacked" by co-workers who were "closer to physically harm[ing] him . . . in support of their cause as Spanish"; and (4) he was involved, over the course of two months, in two allegedly racially motivated confrontations with De Leon, Freddy, and Vargas, Jr. regarding gift giveaways. (Compl. 3(2); EEOC Charge 2). As an initial matter, the majority of Plaintiff's allegations in support of his hostile work environment claim are entirely conclusory. For instance, as stated above, the mere fact that his supervisors spoke to each other in Spanish is insufficient to demonstrate discriminatory animus, as is the mere fact that he was "verbally attacked," absent an indication of how or when. *See Miller v. City of Ithaca*, No. 10 Civ. 597(TJM), 2010 WL 3809842, at *7 (N.D.N.Y. Sept. 22, 2010) (dismissing claim pursuant to Rule 12(b)(6) where there were "insufficient factual allegations to . . . plausibly conclude that the incidents comprising the alleged hostile work environment were on account

of [p]laintiff's race"). Such allegations "do not permit the [C]ourt to infer more than the mere possibility of misconduct" based upon race or national origin. *See Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

Even assuming *arguendo* that Plaintiff has pleaded that the incidents complained of *were* based on his race or national origin, he has not demonstrated that they were "continuous and concerted," rather than minor and episodic, or that any one of them was "extraordinarily severe." *See Cruz,* 202 F.3d at 570; *see also Martinez,* 338 Fed.Appx. at 73 (affirming dismissal pursuant to Rule 12(b)(6) where "[a]ppellant's complaint alleged only one incident [that], [e]ven if ... proved at trial, ... would be insufficient to establish the kind of pervasive harassment necessary to establish a claim of hostile work environment"). For instance, assuming the accuracy of Plaintiff's interpretation of Vargas's use of the term "Africano Negro" as derogatory, the comment is entirely isolated, and there is no indication in the Complaint or EEOC Charge that Vargas's comment was accompanied by a steady stream of similar comments from Vargas or any of Plaintiff's other co-workers. *See, e.g., Ghaly v. U.S. Dep't of Agric.,* 739 F.Supp.2d 185, 196–97 (E.D.N.Y.2010) (concluding that plaintiff failed to state a hostile work environment claim where he was allegedly exposed to a single allegedly derogatory comment because there were no allegations that the comment "effected a negative change ... in the conditions of plaintiff's working environment" or that plaintiff faced a steady barrage of similar comments around the same time); *Rios v. Buffalo & Fort Erie Pub. Bridge Auth.,* No. 04 Civ. 375A (RJA), 2008 WL 657121, at *3 (W.D.N.Y. Mar. 7, 2008) (finding that behavior complained of was "simply too infrequent and episodic to constitute a hostile work environment" where plaintiff identified "only about six specific instances of misconduct

over a thirteen-year period of time" and "the incidents consisted primarily of isolated offensive remarks, jokes and cartoons"). Indeed, Plaintiff's Complaint and EEOC Charge are almost entirely devoid of dates, such that it is impossible to tell whether the events complained of occurred around the same time or years apart. Accordingly, because Plaintiff has failed to plausibly allege that he faced a hostile work environment, the Court dismisses Plaintiff's Title VII claim to the extent that it relies on a hostile work environment theory.

### III. Conclusion

For the aforementioned reasons, the Court finds that Plaintiff has failed to plead claims for discrimination, retaliation, or a hostile work environment. Accordingly, the Court grants Defendant's motion. The Clerk of the Court is respectfully directed to terminate the motion located at Doc. No. 28.

Because Plaintiff had not specifically requested leave to amend his Complaint, the Court will not grant leave here. However, should Plaintiff wish to make a request for leave to amend his Complaint, he may send a letter to the Court, no later than January 4, 2013, comporting with Rule 2.A of the Court's Individual Practices and attaching his proposed amended complaint, which shall state with more specificity the alleged discriminatory conduct at issue, the causal relationship between the discriminatory conduct and the adverse actions, and, where applicable, the dates when such alleged discriminatory conduct occurred. If Plaintiff fails to submit a letter by January 4, 2013 requesting leave to amend his Complaint, the Court will dismiss this action with prejudice.

SO ORDERED.